**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James WILLIAMSON, Defendant-Appellant.**

**No. 27569.**

United States Court of Appeals, Fifth Circuit.

April 3, 1970.

Rehearing Denied June 4, 1970.

**354**

David E. Crawley, Jr., Crawley & Ford, Kosciusko, Miss., David E. Crawley, III, Crawley & Ford, Louisville, Miss., for appellant.

H. M. Ray, U. S. Atty., William M. Dye, Jr., Asst. U. S. Atty., Oxford, Miss., for appellee.

Before JONES, BELL and GODBOLD, Circuit Judges.

JONES, Circuit Judge:

James Williamson, the appellant, was convicted on all three counts of an indictment charging possessing, transferring and transporting moonshine whiskey.[1] His defense was entrapment. The evidence of the Government showed that Alcohol Tax Unit agents made a raid on a barn where a large quantity of untaxed whiskey was found, with Williamson present and engaged in loading a sub-

stantial quantity of the illicit beverage into an automobile belonging to him. Williamson testified on his own behalf that he had been convicted on a liquor charge in 1961 and served about eight months of an 18-month sentence when he was paroled. He stated that he remained out of all moonshine activities until shortly before the raid which resulted in his arrest and the conviction which is here challenged. He related that W. B. Montague, the sheriff of Attala County, Mississippi, approached him on several occasions, urging that he engage in moonshine activities again and promising him protection for a share of the profits. Williamson, according to his own story, told the sheriff that he was too old to engage in the operation of a still, but was finally persuaded by the sheriff to sell liquor made by others and to divide the profits with him. This deal with the sheriff was made in June 1968. The sheriff assisted by making a barn available as the base for the operation. Williamson testified that on the first day of his operation, July 30, 1968, he was in the process of loading into his car 100 gallons of whiskey which was to be delivered to a purchaser procured by the sheriff. However, the raid was made before the loading process could be completed.

To corroborate his story and to establish his defense of entrapment, Williamson called two witnesses to the stand, Carl Black and Garland Edwards. They testified that Williamson had a reputation through 1967 for having gone out of the whiskey business. On cross-examination Black testified that he had "heard" in January of 1968 that Williamson was back in business. Edwards testified that he had "heard" Williamson was back in business about the first of May. About the same time, so Edwards said, Williamson had told him that he was going back in business, and that he had seen Williamson with some whiskey.

The sheriff was called as a witness. He testified that he had suspected that

1. 26 U.S.C. Sec. 5604(a) (1).

Williamson was back in the business of dealing in moonshine liquor but all of his inquiries and investigations had yielded nothing to confirm his suspicion. His testimony regarding his urging Williamson to go into the whiskey business was substantially the same as the story told by Williamson. So also was his recital of the deal with Williamson to provide the barn as the business location and to give protection in exchange for a share in the profits. He stated that he arranged with Williamson to deliver, on the night of July 30, 1968, 100 gallons of whiskey to a fictitious purchaser and later gave the ATU agents the information as to the appropriate time for the raid. The sheriff was not present when the raid was made but understood that it was to be made.

Williamson again took the stand for the purpose of testifying that Edwards was mistaken as to the time when he had told Edwards that he was going back in business and as to the time Edwards had seen moonshine whiskey in his possession. These happenings, Williamson would have said, occurred in June 1968 rather than in May as had been said by Edwards. The court sustained the Government's objection to the testimony on the ground that Williamson was attempting to impeach his own witness. The rejection of this testimony was assigned as error.

On rebuttal the ATU agents denied that the sheriff had arranged for Williamson to be "set up" for their raid. They asserted that they were not aware that Williamson was to be at the barn on the evening the raid took place.

 The question as to the trial court's exclusion of the testimony offered by Williamson in rebuttal on the ground that he was attempting to impeach his own witness is an important one and may have been vital to Williamson's defense. If Williamson was in the moonshine whiskey business in May, prior to his deal with the sheriff which was made in June, his defense of entrapment would be greatly weakened if not demolished.

It seems that the district court failed to recognize the distinction between impeachment and contradiction. Impeachment is an attack upon the credibility of a witness and usually can not be done by the party calling the witness. Contradiction is a challenge to the accuracy of the testimony of the witness and is proper. There may be impeachment without contradiction. There may be contradiction without impeachment. The general rule is thus stated:

"The rule that a party cannot directly impeach his own witness cannot be taken as meaning that a party is bound by what his witness says, even though he does not deny or contradict his witness' statements at the time. Although he may not impeach the general reputation of the witness for truth and veracity, he may, by other witnesses, prove that the facts are otherwise than as stated, and it is no objection to any relevant evidence of material facts on which he relies to sustain his case that it may operate to contradict, and thus discredit, his own witness. There is no rule which prevents a party from showing his witness to have been mistaken as to a particular fact by means of other witnesses." 58 Am.Jur. 442, Witnesses § 797.

The above statement has been approved by this Court. Lincoln Nat. Life Ins. Co. v. Roosth, 5th Cir. 1962, 306 F.2d 110, cert. den. 372 U.S. 912, 83 S.Ct. 726, 9 L.Ed.2d 720. This Court has succinctly stated the principle in this language:

"While a party may not attack the credibility of its own witness (e. g., by impeachment), it is free to offer contradictory evidence." McConville v. Florida Towing Corp., 5th Cir. 1963, 321 F.2d 162.

Because of this error the judgment must be reversed and the cause remanded for a new trial.

 In cross examining one of the ATU agents, Williamson's counsel entered into a line of questioning apparently intended to bolster the entrapment defense. These questions, to which objec-

**356**

tions were sustained, included matters involving the role of arrests in determining the efficiency rating of ATU agents; Government recommendations regarding perseverance on the witness stand should an agent find himself "out on a limb;" the number of times agents had been present at the site of the raid before the night of the 30th; the Government schedule of informers' fees; the ATU's priority list of persons wanted for arrest, and the number of agents who normally participated in a raid. Under the circumstances of this case, the subject of these inquiries had no relevance to the issue. It was not error for the trial court to sustain objections to these questions.

■ The Government, in rebuttal, was permitted to introduce over Williamson's objection, evidence that the whiskey found at a nearby still was of the same chemical content as that found at the barn, and that a plank found at the still site fit onto a truck of unknown ownership which was driven into the barn with a load of warm moonshine while the raid was in progress. This evidence was offered and received as tending to discredit Williamson's story as to where he had received the truckload of whiskey. While the evidence may have established the source from which Williamson procured his merchandise, it did not bear upon the entrapment issue nor upon the charges contained in the indictment. The evidence did not identify Williamson as the owner or operator of the still. It may be noted that he was not charged with any offense having any connection with the still. The evidence was irrelevant and should not be received for the purpose of impeachment. Impeachment by contradiction is not permitted on collateral matters. Head v. Halliburton Oilwell Cement Co., 5th Cir. 1966, 370 F.2d 545. See also 3 Wigmore Evidence, § 1003 (3d Ed. 1940). This evidence should not have been admitted.

■■ A motion was made by Williamson for an acquittal on the ground that unlawful entrapment was established as a matter of law. While there are situations in which the granting of such a motion would be proper, this is not one of them. Such a motion is to be granted where the uncontradicted evidence clearly shows entrapment and is capable of no other interpretation. Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848; Suarez v. United States, 5th Cir. 1962, 309 F.2d 709. In this case there are conflicts in testimony to be resolved and factual inferences to be drawn by the jury.

■ Williamson requested and the court refused to give a special instruction with respect to his reputation for not being in the moonshine whiskey business for the period prior to his admitted return to such activity. The instructions given were adequate and the assignment of error is without merit.

The judgment of conviction and the sentence of the court is reversed and the cause is remanded for a new trial.

Reversed and remanded.

GODBOLD, Circuit Judge:
I concur in the result.