Michael A. HOLBERT, Appellant,

v.

UNITED STATES, Appellee.

No. 83–1557.

District of Columbia Court of Appeals.

Argued Jan. 29, 1986.
Decided Aug. 13, 1986.

Randall L. Sarosdy, with whom Stephen G. Milliken, Washington, D.C., was on briefs, for appellant.

Ilene G. Rosenthal, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Thomas J. Tourish, Jr., and G. William Currier, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before FERREN, BELSON and STEADMAN, Associate Judges.

BELSON, Associate Judge:

Appellant was convicted, following a jury trial, of second-degree burglary, D.C.Code § 22–1801(b) (1981), and grand larceny, *id.* § 22–2201. The trial court later reduced the grand larceny conviction to petit larceny. On direct appeal, appellant argues that the mid-trial arrest of a defense wit-

ness violated appellant's Sixth Amendment right to compulsory process. He further contends that the trial court erred in excluding bias testimony appellant wished to elicit from this defense witness. Finally, appellant asserts the trial court erred in denying his motion for a new trial based on alleged prosecutorial misconduct. We affirm.

During the first day of trial, the government presented testimony by Phillip Randolph, a neighbor, that he observed appellant in the act of burglarizing an apartment. Randolph implicated both appellant and Gregory Mason, one of appellant's brothers. A second government witness, John Kenny, testified that on the same night as the burglary he came upon property later determined to have been taken from the burglarized apartment. Kenny, an employee of the Washington Gas Light Company, discovered the property while investigating a possible gas leak in the basement of the building in which appellant and his two brothers lived. While in the basement, Kenny saw someone approach the area where the property was stored, but the individual ran away when Kenny flashed a light on the person.

The government's first witness on the second day of trial was R.P., a twelve-year-old who lived on the same floor as the burglary victim. R.P. corroborated Randolph's identification of appellant as one of the burglars, and was not asked to identify appellant's accomplice. Following the testimony of two more witnesses, the government rested.

■ After the first defense witness stepped down, around 11:40 a.m., the court declared a 5 minute recess. When trial resumed the prosecutor immediately requested a bench conference. He informed the court that two government witnesses, Kenny and R.P., had seen Thomas Mason, appellant's other brother and an anticipated defense witness, in the courthouse earlier that morning and had recognized him. R.P. recalled seeing him participate in the burglary, while Kenny remembered seeing him in appellant's basement. The government apparently learned of these identifications of Thomas Mason around 9:30 a.m. Trial commenced that day at 10:40 a.m. Shortly before noon, after informing the court of this turn of events and his desire to have Thomas Mason arrested, the prosecutor asked the court's guidance. Following the procedure set forth in *In re J.W.Y.*, 363 A.2d 674, 683–84 (D.C.1976), the trial court appointed independent counsel to apprise Mason of the situation and advise him of his Fifth Amendment privilege against self-incrimination. Following a lunch recess, appointed counsel informed the trial court that Mason intended to invoke the Fifth Amendment if questioned about any events on the day of the alleged burglary. Mason was arrested later the same day, before the defense could call him to testify.

The pertinent inquiries thus are whether the invocation of the Fifth Amendment privilege by the prospective witness can be said to have been the result of government action, *In re J.W.Y., supra*, 363 A.2d at 683 (D.C.1976), and, if so, whether such action was improper, *i.e.*, "exceeded the bounds of propriety as delineated by appellant's constitutional guarantees." *Id.; Alston v. United States*, 383 A.2d 307, 310–11 (D.C. 1978). Unquestionably, the prosecutor's actions caused Mason to refuse to testify. *Compare Reese v. United States*, 467 A.2d 152, 156 (D.C.1983) (prosecutor's action not "but for" cause of witness' refusal to testify).

We do not, however, discern any impropriety in the prosecutor's causing the arrest of Thomas Mason after informing the court of the two eyewitness identifications implicating him in the alleged burglary. The prosecutor acquired the information about Thomas Mason's role in the burglary in a perfectly proper and lawful manner. Moreover, the prosecutor's handling of the delicate matter of how to notify Mason accorded with this court's teaching in *In re J.W.Y., supra*, at 683–84, which in turn adopted the recommendation of the United States Court of Appeals for the District of

Columbia Circuit in *United States v. Smith*, 156 U.S.App.D.C. 66, 69, 478 F.2d 976, 979 (1973). Specifically, the prosecutor brought the entire matter to the trial court's attention and sought its guidance on how to proceed.

The only aspect of the prosecutor's conduct which could have been improved upon is the promptness with which he notified the trial court upon learning of the identification of Thomas Mason. The apparent delay of over 2 hours is, however, not pressed by appellant. Nor, in our view, is it of itself indicative of prosecutorial misconduct. The prosecutor's conduct, overall, harmonized with the procedures set forth in *In re J.W.Y., supra,* 363 A.2d at 683–84.

We disagree with appellant's assertion that the fact that Thomas Mason's arrest occurred during trial tends to establish prosecutorial misconduct. We have no doubt that the mid-trial arrest of Mason introduced an unwelcome and unexpected factor into appellant's defense. We think, however, that it is significant that, once the prosecutor learned of the two identifications of Mason, the few alternatives available to him would have had about the same impact on appellant's case. At that point, the prosecutor owed Thomas Mason an ethical obligation to assure that he was advised of the potential for self-incrimination because the prosecutor knew he would be questioning Mason later on in the trial. Two provisions of the Standards for Criminal Justice provide guidance:

Standard 3–3.2. Relations with prospective witnesses

(b) Whenever a prosecutor knows or has reason to believe that the conduct of a witness to be interviewed may be the subject of a criminal prosecution, the prosecutor or the prosecutor's investigator should advise the witness concerning possible self-incrimination and the possible need for counsel.

Standard 3–3.6. Quality and scope of evidence before grand jury

(d) If the prosecutor believes that a witness is a potential defendant, the prosecutor should not seek to compel the witness's testimony before the grand jury without informing the witness that he or she may be charged and that the witness should seek independent legal advice concerning his or her rights.

*Standards for Criminal Justice* §§ 3–3.-2(b) and 3–3.6(d) (1982). While neither of these standards is precisely on point, we think the ethical obligation on a prosecutor to alert a potential defendant to the possibility of self-incrimination applies at least as forcefully in the context of a trial as it does in a grand jury or interview setting. Thus, even if the prosecutor had elected to wait until *after* the trial to cause the arrest of Mason, he still would have had the same ethical obligation to Mason and duty of disclosure to the court *before* Mason testified in appellant's trial. Consequently, Mason would still have been advised of his Fifth Amendment privilege against self-incrimination prior to taking the stand in appellant's trial.

We doubt that a witness in Mason's shoes would have been significantly more inclined to invoke the Fifth Amendment in the face of a mid-trial arrest than he would have been had he expected a post-trial arrest. The witness' self-interest strongly favors invoking the Fifth Amendment in both situations. Given the prosecutor's ethical obligation to warn Mason of possible self-incrimination prior to Mason's taking the stand, the mid-trial arrest of Mason did not unduly prejudice appellant's Sixth Amendment rights. When we add to this the well-settled proposition that a defendant's Sixth Amendment rights must yield whenever they conflict with a valid exercise of the Fifth Amendment privilege against self-incrimination, *Letsinger v. United States,* 402 A.2d 411, 416 (D.C. 1979), we conclude that nothing short of indefinite immunity from arrest for Mason would have preserved his testimony for appellant's use.

■ Since appellant suggests neither that the prosecutor could *never* arrest Mason nor that the prosecutor can be blamed for acquiring probable cause regarding Mason during trial rather than after trial, we perceive no basis for appellant's prosecutorial misconduct claim.[1] Accordingly, we sustain the trial court's denial of appellant's motion for new trial.[2]

■ Appellant further asserts that even if the mid-trial arrest were proper, the trial court violated his Sixth Amendment right to compulsory process when it refused to allow Thomas Mason voluntarily to testify only that at some unspecified time within a few months before the alleged burglary, a brother of Phillip Randolph, a government witness, pulled a gun on Mason. Appellant argues that this testimony would have been relevant to Phillip Randolph's bias against appellant and that, because such testimony was not integrally related to the events of the crime, the trial court should have allowed Mason to give such limited testimony without being subjected to cross-examination about the crime.

The trial judge conducted a lengthy bench conference concerning the proffered limited testimony. Appellant's counsel conceded the gun incident did not "have any direct relationship at all with the particular offense," but insisted the testimony should be allowed to come in as contradiction of Phillip Randolph's earlier testimony, which appellant's counsel characterized as indicating a close relationship between Phillip Randolph and the Holbert-Mason family. The trial court disagreed with this characterization, correctly noting that Phillip Ran-

dolph did no more than testify that he became acquainted with appellant and his brother Gregory Mason by playing ball with them shortly before the night of the alleged burglary. The trial court also emphasized that there was no indication that Phillip Randolph even knew of the alleged confrontation between his brother and Thomas Mason, appellant's brother. Therefore, the court ruled the proffered testimony about the incident irrelevant to show Phillip Randolph's bias against appellant.

We perceive no abuse of discretion in this ruling. *See McClain v. United States,* 460 A.2d 562, 569 (D.C.1983) (decision to exclude evidence as irrelevant committed to discretion of trial judge). Appellant's counsel never even suggested that the trial court should infer that Phillip Randolph knew of the incident, nor did counsel proffer evidence to that effect, despite a full opportunity to present the defense position during the bench conference. Absent a direct link between the incident and Phillip Randolph, we cannot say the trial court abused its discretion in excluding the proffered testimony as irrelevant.

A second and independent discretionary ruling by the trial court also had the effect of excluding Thomas Mason's proffered testimony about the alleged gun incident. The trial court, in the course of the lengthy bench conference referred to above, decided that if the proffered testimony were given on direct examination, the prosecution would be unfairly limited in its cross-examination should it not be permitted to inquire about Mason's activities at the time

---

1. Appellant contends that the fact that charges against Mason were dropped within about a week after his arrest demonstrates prosecutorial misconduct. At oral argument, however, appellant's counsel did not contest the fact that Mason's case was transferred to the Office of the District of Columbia Corporation Counsel when it was learned that Mason was a juvenile at the time of the alleged offenses. The record is devoid of any indication why Corporation Counsel dropped the charges. In any event, the record furnishes no basis for finding prosecuto-

rial misconduct on the part of the United States Attorney's Office, which prosecuted appellant.

2. *Bray v. Peyton,* 429 F.2d 500 (4th Cir.1970), upon which appellant relies, can be distinguished. In *Bray,* the mid-trial arrest constituted the resuscitation of a charge previously dropped. *Id.* at 501. Moreover, the arrest directly violated a provision of Virginia state law against arresting out-of-state persons summoned to attend a trial. *Id.*

of the alleged burglary. The trial court reasoned that the government should be allowed to explore Mason's motive for testifying falsely to shield himself from criminal liability, particularly in view of his imminent arrest for participation in the alleged burglary. The court thereby rejected appellant's suggestion that Mason's proffered testimony be insulated against the type of cross-examination which, according to Mason, would trigger his invocation of the Fifth Amendment. Thomas Mason's appointed counsel made it clear that without such insulation, Mason would not have testified, even if his testimony had been ruled relevant.

In weighing this additional ground for sustaining the trial court, we recognize that it is a close issue whether the government's legitimate interest in effective cross-examination outweighed the defendant's interest in eliciting testimony which, in and of itself, did not directly relate to matters about which the witness has stated an intention to plead the Fifth Amendment. Decisions on the scope of cross-examination are entrusted to the sound discretion of the trial court. *Leftwich v. United States*, 460 A.2d 993, 996 (D.C.1983). Given the thorough ventilation and closeness of both the issues of relevance and of the fairness to the government of limited cross-examination, we are satisfied that the trial court did not abuse its discretion in excluding Thomas Mason's proffered testimony.

▮ Finally, it should be noted that the trial court fully discharged its duty to consider whether the Fifth Amendment could properly be invoked under the circumstances. Under *Jaggers v. United States*, 482 A.2d 786, 793 (D.C.1984), the trial court must consider whether proffered testimony is incriminatory and whether there is a substantial risk of prosecution. The trial court learned from the prosecution that if Mason took the stand, he would be questioned about his activities on the day of the alleged burglary. Having ruled that such cross-examination would be permitted as bearing on Mason's motive to lie, the trial court properly recognized that Mason would be exposed to inquiry into matters that could harm Mason in his own incipient case. This is a sufficient basis for finding the proffered testimony incriminatory. *See Reese v. United States*, 467 A.2d 152, 157 (D.C.1983). Furthermore, the trial court knew there was a substantial risk of prosecution because the prosecutor stated his intent to have Mason arrested for participating in the alleged burglary that day.

The trial court also met the requirement, recited in *Davis v. United States*, 482 A.2d 783, 785 (D.C.1984), of considering alternatives which might have permitted Mason to testify under the protection of a narrower Fifth Amendment privilege. *See also Salim v. United States*, 480 A.2d 710, 714 (D.C.1984). As elaborated above, the trial court inquired extensively into the feasibility of appellant's suggestion that Mason's testimony be confined to the alleged gun incident with Phillip Randolph's brother. The trial court concluded, however, that even if Mason's testimony were so limited, the government would still be entitled to cross-examine Mason regarding his activities on the day of the alleged burglary. As previously noted, Mason indicated through appointed counsel his unwillingness to testify unless insulated against such cross-examination. Therefore, the trial court properly excused Mason from testifying after it became apparent "that the witness will refuse to answer essentially all of the questions which he may be asked." *Reese, supra,* 467 A.2d at 157.

The net effect of the government witnesses' recognizing Thomas Mason, the resultant mid-trial arrest of Thomas Mason, and the trial court's exclusion of Mason's proffered testimony about the incident with Phillip Randolph's brother was the elimination of one of appellant's witnesses. While we do not seek to minimize this loss to appellant, we discern no basis, constitution-

al or other, for reversing his convictions. At every critical step of the way, as we have traced in this opinion, the key players involved acted within their legal authority. This is a case where the prosecutor did his job, the trial court exercised its discretion deliberately, and appellant's witness elected to invoke his Fifth Amendment privilege against self-incrimination after consulting with independent counsel. In light of *Letsinger, supra*, 402 A.2d at 416, which declares that a defendant's Sixth Amendment right of compulsory process must be subordinated to a witness' valid Fifth Amendment self-incrimination privilege whenever there is a conflict, we conclude that appellant's Sixth Amendment claim fails.

*Affirmed.*