Kenneth D. DENEAL, Appellant,

v.

UNITED STATES, Appellee.

No. 85–1554.

District of Columbia Court of Appeals.

Argued Oct. 13, 1988.
Decided Dec. 14, 1988.

**4.** I concur in all respects with Part II of the court's opinion, respecting the trial court's in- structions.

Ted Kavrukov, appointed by this court, for appellant.

Roy W. McLeese III, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Michael W. Farrell and Debra L. Long–Doyle, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN and STEADMAN, Associate Judges, and REILLY, Senior Judge.

REILLY, Senior Judge:

Appellant, found guilty by a jury of carrying a pistol without a license, D.C. Code § 22–3204 (1981); possession of an unregistered firearm, *id.* § 6–2311(a) (1981); unlawful possession of ammunition, *id.* § 6–2361(3) (1988 Supp.); possession of phencyclidine (PCP), *id.* § 33–541(d) (1988 Repl.); and possession of marijuana, *id.;* [1] asserts three grounds for reversal: the trial court erred in (1) permitting one of the government's principal witnesses to invoke the privilege against self-incrimination; (2) limiting the cross-examination of one of the arresting officers; and (3) instructing the jury regarding the possession with intent to distribute and carrying a pistol without a license counts. We affirm.

I

On January 7, 1985, two policemen in a marked scout car observed an erratically-driven Audi heading north on Ninth Street. The vehicle swerved at them from the left lane, almost striking their car, and continued on. The officers followed, and stopped the vehicle. Officer Mayberry went to the passenger side where appellant sat and shined his flashlight into the car where he spotted the cylinder of a gun with live ammunition in it between appellant's legs. He immediately ordered appellant out of the car, and called for a back-up unit. After assistance arrived, Mayberry looked in the car and discovered the frame of a .38–caliber revolver lying on the floor beneath where appellant had been sitting.

---

**1.** These last two counts are lesser-included offenses of possession with intent to distribute phencyclidine and marijuana with which appellant was originally charged.

A search of appellant incident to his arrest uncovered a bag containing what laboratory analysis later proved to be 43.41 grams of marijuana laced with phencyclidine (PCP) with an approximate street value of $2,100. Although both appellant and the driver of the car, Enrico Hoye, were arrested at the scene, the United States Attorney declined to prosecute Hoye. Appellant was indicted after the case against him was presented to a grand jury.

## II

Prior to trial, defense counsel subpoenaed Hoye to testify. However, he failed to honor the subpoena served on him, and was later arrested on a bench warrant issued after his failure to appear. Once his presence was obtained, the trial court appointed counsel for Hoye to advise him of his privilege against self-incrimination. After counsel had conferred with Hoye, the trial court conducted an inquiry on the matter and permitted him to assert his privilege as to the circumstances surrounding his presence in the car on the night of the arrest. Appellant argues that it was error for the trial judge to have excused Hoye from taking the stand without first determining whether the proffered testimony was incriminating in nature and whether such testimony would have exposed Hoye to a substantial risk of prosecution.

▮▮▮▮ We remark that at no time during the hearing on Hoye's assertion of his privilege did appellant's trial counsel object to any facet of the proceeding; in fact, he was in complete agreement with the trial court at all stages of its inquiry and ruling.[2] As a result, we conclude that the trial court properly allowed the witness to claim the privilege, *see Holbert v. United States,* 513 A.2d 825, 829 (D.C.1986); *Jaggers v. United States,* 482 A.2d 786, 793 (D.C.1984);[3] and to assert it prior to testifying in re-

---

2. To illustrate, the following colloquy took place between the court and defense counsel:

> THE COURT: I do recall a Court of Appeals decision that indicated ... that the judge had some duty to ascertain whether there is a possibility of a grant of immunity by the Government.
> COUNSEL FOR HOYE: I discussed that with [the prosecutor] and she said absolutely no.
> THE COURT: Well, I think in accordance with that case, and I can't cite it, I think I have the responsibility of asking.
> COUNSEL FOR HOYE: I agree, Your Honor....
> DEFENSE COUNSEL: I believe that the case law as stated is pretty clear, so there's not much to say....
> \* \* \* \* \* \*
> THE COURT: [A]re you satisfied that a narrower privilege would not suffice ...?
> DEFENSE COUNSEL: Well ... as soon as I start asking questions about what happened that particular night ... the Fifth Amendment privilege will be invoked. So it would seem an unnecessary exercise to go through questions....
> THE COURT: No, I agree, *I just want to be sure on the record that we're in agreement.*
> \* \* \* \* \* \*
> THE COURT: [I]t's been clear ... that [Hoye] cannot be a witness ... [H]e can properly exert [sic] his Fifth Amendment privileges and he's not going to be a witness in this trial, period. We agree on that, right?
> DEFENSE COUNSEL: *We agree on that, yes. He's not available.*

(Emphasis added.)

3. From our examination of the record "it is fair to say that the trial court considered the incriminating nature of the proposed testimony" in reviewing the facts surrounding the night of appellant's arrest. *Jackson v. United States,* 490 A.2d 192, 196 n. 8 (D.C.1985). It is also apparent that prior to exercising its discretion it did, in fact, consider the danger of prosecution and determined the risk to be very real. *Cf. Holbert, supra,* 513 A.2d at 829. We cannot stress enough, however, the importance of a trial court approaching its analyses with more specificity in situations such as this where our decisions require the application of a given test to a particular factual scenario. *Cf. Richardson v. United States,* 520 A.2d 692, 697 n. 5 (D.C.) (citing *Murville v. Murville,* 433 A.2d 1106, 1109 (D.C.1981)), *cert. denied,* — U.S. —, 108 S.Ct. 267, 98 L.Ed.2d 224 (1987).

Despite the lack of specific findings, we are unpersuaded by appellant's attempt to liken this case to *Davis v. United States,* 482 A.2d 783 (D.C.1984). In *Davis,* we remanded the case because the trial court failed to make sufficient inquiries upon which properly to determine whether the witness "was in a situation where he had reasonable cause to apprehend [prosecution]." *Id.* at 785. *Davis* is distinguishable, however, because in that case the totality of the judge's inquiry consisted of asking the witness whether he desired to invoke his privilege. When the witness indicated his desire to do so, the judge simply ruled that he could not be called. In contrast, the record here discloses a much broader inquiry by the court.

sponse to any question posed, *see Holbert, supra,* 513 A.2d at 829; *Jackson, supra,* 490 A.2d at 196. While it was revealed for the first time by a question put to the government in oral argument that Hoye had previously testified before the grand jury—conduct that generally precludes a later assertion of the privilege,[4] *see Salim v. United States,* 480 A.2d 710, 713–14 (D.C.1984); *Ellis v. United States,* 135 U.S. App.D.C. 35, 46–47, 416 F.2d 791, 802–03 (1969); appellant is hardly " 'in a position to complain since his counsel neither asked the judge to direct the witness to answer questions nor to rule that the privilege was improperly asserted.' " *Vaughn v. United States,* 364 A.2d 1187, 1190 (D.C.1976) (quoting *United States v. Domenech,* 476 F.2d 1229, 1231 (2d Cir.), *cert. denied,* 414 U.S. 840, 94 S.Ct. 95, 38 L.Ed.2d 77 (1973)).

### III

Appellant also contends that the trial court erred in limiting defense counsel's cross-examination of Officer Mayberry. He had been allowed to ask the witness about the efficiency ratings issued to police officers by their superiors and had brought out the fact that the number of arrests was one of the factors considered in evaluating the performance of an officer. When defense counsel then attempted to interrogate Mayberry further about personnel regulations and practices, the trial court ruled out further resort to this line of questioning.

 Although possible bias of a principal government witness is always a proper subject for cross-examination, *Springer v. United States,* 388 A.2d 846, 855 (D.C. 1978), the right to explore that possibility is not without limits, *Washington v. United States,* 499 A.2d 95, 101 (D.C.1985); *see Chipman v. Mercer,* 628 F.2d 528, 531 (9th Cir.1980) (court not required to permit cross-examination simply on theory bias might be disclosed). Once a trial court has allowed some inquiry on a particular topic during cross-examination,[5] the extent of that examination is within the sound discretion of the trial court, *Alford v. United States,* 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931); *Bush v. United States,* 516 A.2d 186, 196 (D.C.1986); and we will reverse only on a showing of an abuse of that discretion. *See Reed v. United States,* 452 A.2d 1173, 1178 (D.C.1982), *cert. denied,* 464 U.S. 839, 104 S.Ct. 132, 78 L.Ed.2d 127 (1983); *Mitchell v. United States,* 408 A.2d 1213, 1215 (D.C.1979).

 When questioning seeking to show bias is objected to as being irrelevant or nonprobative, as in this case, the party posing the questions must proffer to the court "some facts which support a genuine belief" that the witness is biased in the manner asserted, *see Jones v. United States,* 516 A.2d 513, 517 (D.C.1986) (citation omitted); *see also* 3A WIGMORE, EVIDENCE § 945 (Chadbourn rev.1970) (cross-examination to show bias must be designed to elicit a specific personal bias on part of witness); and that the proposed questions are probative of bias, *see Best v. United States,* 328 A.2d 378, 381–82 (D.C. 1974). Here, appellant proffered neither facts nor follow-up questions which would support the theory that Mayberry's own personnel record was such that he had any incentive to misrepresent the circumstances justifying the arrest. The trial court did not abuse judicial discretion in curtailing

---

**4.** Although the prosecutor, if aware of Hoye's grand jury testimony, was less than candid in not bringing this to the court's attention during the bench colloquy, we also note that defense counsel refrained from any question which might have brought the fact to light. The record suggests that counsel's ready acquiescence to the claim of privilege may have been a trial tactic. It enabled him to call two other witnesses—relatives of the defendant who testified that Hoye had told them after the arrest that it was he who brought the gun into the car, and fear-

ing search when the police stopped the vehicle, suddenly placed the drugs in the accused's possession. These witnesses also quoted Hoye as promising to confess and thereby exonerate his friend. Had it not been for the ruling on privilege, such testimony might have been contradicted.

**5.** Prior to the objection by the prosecutor, appellant placed before the jury evidence sufficient for it to infer bias if it so chose.

the scope of appellant's cross-examination. *See Jones, supra*, 516 A.2d at 517.[6]

## IV

■ Finally, appellant argues that the trial court incorrectly instructed the jury. Specifically, he assigns error to the court's instructions regarding the charge of carrying a pistol without a license (CPWL).[7] After charging the jury on the four elements of this particular offense, *see* Criminal Jury Instructions for the District of Columbia, No. 4.81(A) (3d ed. 1973), the court also said that "a pistol is carried openly or concealed on or about the defendant's person if it is located in such proximity to the person as to be convenient of access and within reach." *See id.* no. 4.81(C). Defense counsel voiced no objection to these instructions.

Shortly after the case had been sent to the jury, the court received a note which read, "Judge, we need to have you explain the definition of carrying a firearm." The judge proposed to both counsel to reiterate instruction no. 4.81(C). Defense counsel also requested that the possession instruction, no. 3.11, be given, and the court agreed to do so. The judge then reread no. 4.81(C), and told the jury that the offense of CPWL "does not include the concept of possession per se[, b]ut it might help you to have that possession instruction head again because I think it's a different concept." The trial judge reread instruction no. 3.11,

reminding the jury that it applied to the other charges in the case and that the concept of possession "is not really applicable" to a charge of CPWL. After the jury retired to resume deliberations, defense counsel informed the court that he thought it erroneous to charge that possession is not an element of CPWL, but did no more to pursue the issue than to say he would look for supporting cases and present them to the court when deliberations resumed after the weekend. He submitted none before the verdict was returned, but now presses the issue on appeal.

■ Super.Ct.Crim.R. 30 sets forth the procedural guidelines for challenging jury instructions. "[N]o party may assign as error any portion of a charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict...." The purpose of this timely exception rule is to give the trial court the opportunity to correct errors and omissions which otherwise might necessitate a new trial, thus discouraging counsel from purposely withholding objections. While the rule is not explicit, its intent is no less applicable to situations where the jury, having begun its deliberations, is reinstructed by the trial court. Hence, to preserve for appeal an objection to the form of a charge given while reinstructing a jury, counsel must object before the jury again retires to re-

---

**6.** We note that several jurisdictions preclude defense counsel from casting a shadow of bias over the police force in general through this type of questioning; rather, the questioning must have some bearing on the personal credibility or bias on the part of a witness. *See, e.g., United States v. Williamson*, 424 F.2d 353, 355–56 (5th Cir.1970); *Rowe v. State*, 62 Md.App. 486, 493–99, 490 A.2d 278, 281–84 (questions regarding general policy of whether officers received promotions for closing major homicide cases to specific officer absent factual showing), *cert. denied*, 303 Md. 684, 496 A.2d 683 (1985); *State v. Bartowski*, 290 N.W.2d 218, 218–20 (N.D.1980) (question whether increased appropriations for drug enforcement created political pressure to increase conviction rate prohibited); *State v. Baril*, 127 Vt. 394, 400, 250 A.2d 732, 736 (1969) (questioning seeking to establish bias link between officer's motivation for making arrest and criterion for promotion prohibited); *but see Haeger v. State*, 181 Ind.App. 5, 390

N.E.2d 239 (1979). We need not, however, decide the issue.

**7.** In addition, he contends that the trial judge erred in refusing to instruct the jury that appellant would receive a mandatory-minimum sentence if convicted of possession with intent to distribute phencyclidine. His reliance on *United States v. Caldwell*, 178 U.S.App.D.C. 20, 543 F.2d 1333 (1974), *cert. denied*, 423 U.S. 1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976), for that proposition, however, is misplaced. *See id.* at 52, 543 F.2d at 1365 ("sentencing ... is solely the province of the court, not the jury"); *accord, Alston v. United States*, 383 A.2d 307, 314 (D.C.1978) (the jury should not consider the question of possible punishment of a defendant in arriving at verdict). In any event, because the jury acquitted appellant on this particular count, any review of the concomitant jury instruction is unnecessary.

sume deliberations.[8] As appellant did not comply with this requirement,[9] we review his claim under the plain error rule. *See Sloan v. United States,* 527 A.2d 1277, 1284 (D.C.1986); *Allen v. United States,* 495 A.2d 1145, 1151 (D.C.1985); *Watts v. United States,* 362 A.2d 706 (D.C.1976) (error must be so clearly prejudicial to appellant's rights as to jeopardize the very fairness and integrity of trial). We discern no such error.

■ The trial court properly instructed the jury on the elements of CPWL (including the element of carrying). At least on the facts here, no more was required and defense counsel failed to object to the instructions as originally given. His assertion of error consequently comes too late. *See Allen, supra,* 495 A.2d at 1151. In any event, while the concepts of "possession" and "carrying" are indeed similar, *compare* instruction no. 3.11 (definition of constructive possession) *with* instruction no. 4.81(C) (definition of carrying), they are not identical. *See generally Brown v. United States,* 546 A.2d 390, 394–99 (D.C. 1988). Although the trial judge's comments regarding the difference were perhaps inartfully worded, such comments must not be examined in a vacuum, but with reference to "what preceeded [them] and also with what followed." *Boyd v. United States,* 271 U.S. 104, 107–08, 46 S.Ct. 442, 443, 70 L.Ed. 857 (1926). The trial court carefully ensured that the jury would not confuse the issue of possession as it relates to the unregistered firearm and ammunition charges with that of carrying for purposes of CPWL, a particularly appropriate action to prevent any confusing inconsistency between the original instruction and the reinstruction. The judge thrice instructed the jury on the element of carrying, and repeated the definition of possession with the caveat that it was applicable only to the other charges. We conclude that the jury was thus properly informed of the applicable law. *Cf. Christian v. United States,* 394 A.2d 1, 49 (D.C. 1978) (per curiam) (failure to give a requested instruction is not reversible error if instructions actually given inform jury of applicable legal principles), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979).

AFFIRMED.

NEWMAN, Associate Judge, concurring:

I write separately to address the approach by the Assistant U.S. Attorney respecting defense witness Enrico Hoye's invocation of his Fifth Amendment privilege against self-incrimination. The government's brief contains indications that it knew that Hoye had testified before the grand jury. At oral argument, in response to questioning by this panel, the government stated explicitly that this was so. Indeed, the government admitted that it too had subpoenaed Hoye as a trial witness.

From this, I conclude that the prosecutor knew that Hoye testified before the grand jury yet made no disclosure to the trial court, a fact which if known would have mandated a determination by the trial court as to whether Hoye waived his Fifth Amendment privilege. *Salim v. United States,* 480 A.2d 710, 713–14 (D.C.1984). Instead, the trial court granted Hoye a blanket assertion of the privilege without knowledge of Hoye's grand jury appearance.

Although I find that no prejudice resulted from the trial court's decision since Hoye's unavailability enabled appellant to call two witnesses under the statement against penal interest exception to the hearsay rule,[1] FED.R.EVID. 804(b)(3);

---

8. Of course, counsel may approach the bench to voice an objection "out of the hearing of the jury." Super.Ct.Crim.R. 30; *United States v. Schartner,* 426 F.2d 470, 478–79 (3d Cir.1970).

9. The statement in appellant's brief that he "immediately requested that the Court instruct the jury that the definition of possession applies to this charge ..." is clearly belied by the record.

1. Under Rule 804(b)(3) a statement against penal interest is not excluded by the hearsay rule if the declarant is unavailable as a witness. A statement against penal interest is "a statement which at the time of its making ... tended to subject [the declarant] to civil or criminal liability ... [so] that a reasonable man in his position would not have made the statement unless he

*Laumer v. United States,* 409 A.2d 190, 199 (D.C.1979) (en banc), I object strongly to the prosecutor's approach in this case. To stand mute before the court with knowledge peculiarly available to the government constitutes prosecutorial misconduct and should not be condoned. As a representative of the government, the prosecutor has a duty to deal in a forthright manner that enhances, not undermines, the integrity of the judicial process. This applies whether the particular prosecutor has actual or constructive knowledge of the facts in issue. Although it appears that the prosecutor had actual knowledge of Hoye's grand jury appearance in this case, the burden is on the prosecutor's office to " 'let the left hand know what the right hand is doing' or has done." *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). Thus, "whether the nondisclosure is the result of negligence or design," the responsibility rests with the prosecutor to be informed of the facts, and proceed accordingly. *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1971).

believed it to be true ..." Fᴇᴅ.R.Eᴠɪᴅ. 804(b)(3). In this case, Hoye's unavailability, enabled the defense counsel to call appellant's aunt and brother who both testified as to statements that Hoye had made to them. Appellant's aunt, Sabrina Deneal, testified that Hoye told her that he had given appellant a bag to hold when the police stopped them thinking that the police would not search appellant, that Hoye admitted to her that appellant "didn't know the pistol was in there," and that Hoye told her that "everything would be all right, that [Hoye] wasn't going to let [appellant] take his weight because [Hoye] knew he was wrong." Appellant's brother, Lawrence Baylor, testified that Hoye told him that appellant would be allright and that he wouldn't let him take "the beef" for something Hoye had done.