**Frank R. CURINGTON, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 90–CF–1320.

District of Columbia Court of Appeals.

Argued Dec. 18, 1992.
Decided March 5, 1993.

Mindy A. Daniels, appointed by this court, for appellant.

James S. Sweeney, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, and Dolan L. Garrett, Asst. U.S. Attys., were on the brief, for appellee.

Before SCHWELB, KING and SULLIVAN, Associate Judges.

SULLIVAN, Associate Judge:

Appellant, Frank R. Curington, was tried by a jury and convicted of second-degree murder while armed in violation of D.C.Code §§ 22–2403, –3202 (1989) in the shooting death of Dilante Troy Cliette. He was also found guilty of possession of a firearm during a crime of violence or dangerous offense in violation of D.C.Code § 22–3204(b) (1992 Supp.) and of carrying a pistol without a license in violation of D.C.Code § 22–3204(a) (1989 and 1992 Supp.).

In this appeal, appellant raises two principal issues. First, we consider whether appellant's convictions must be reversed for failure of the trial court to instruct the jury on the statutory definition of a pistol.[1] We also consider whether the evidence was sufficient to sustain appellant's convictions. We affirm.

**I.**

The government's evidence showed that appellant fatally shot Cliette on June 30, 1989. The shooting occurred as the culmination of an escalating series of violent confrontations among several youths, including a heated encounter earlier the same day involving appellant, the decedent, and Bernard Battle. Also present during the earlier encounter was David Campbell, who had accompanied Cliette and Battle to the home of Patrice Cooper, where appellant was staying. That night, while appellant was standing in the rear doorway of a building at 2309 Galen Street, Southeast, he saw Cliette and Campbell pass by twice. The second time he saw them, he fired three shots at Cliette, killing him. Cliette died on July 3, 1989. Dr. Vincent Ellis Hill, Deputy Medical Examiner for the District of Columbia, testified at trial that the official report of the autopsy he performed on Cliette states that the cause of death was "gunshot wound of head."

Appellant testified on his own behalf, claiming self-defense. He said he awoke on June 30, 1989, to find Cliette pointing a "gun ... in [his] face." He said that he heard Cliette tell Battle that "they should shoot [him] now," but that since "other people [were] in the house, ... they [weren't] going to do it." Appellant also testified that shortly thereafter, he went out to the front porch, where Cliette challenged him to fight and he agreed, following which Cliette said, "win or lose, [he intended] to shoot [appellant] anyway."[2] Appellant testified further that just before he shot Cliette that same evening, he saw Cliette turn into a parking lot to walk toward him, after which Cliette put "his hands in his pocket" and began "looking to his right ... [and] to his left." Appellant stated that he

---

1. A pistol is defined as "any firearm with a barrel less than [twelve] inches in length." D.C.Code § 22–3201(a) (1989).

2. Several neighbors overheard the dialogue among the three youths while they were standing on the porch of the home where appellant was staying after Battle and Cliette had awakened appellant. One neighbor, Ruth Washington, testified that Battle threatened appellant by saying that "he was going to die that day," and that "15 people ... wanted to kill him...."

Another neighbor, Priscilla Middleton, testified that she heard Battle say repeatedly that "he was going to kill him and that somebody else down the street wanted to kill him." Those two neighbors and Bruce Battle, Bernard Battle's brother, all testified that a jeep pulled up at that point and that appellant told the man in the jeep, in Ms. Middleton's words, "to tell his brother to get him a gun because he was afraid that somebody was going to do something to him."

then "[saw] a gun ... grabbed it and ... shot." He said he "shot [Cliette] because [he] was scared at the time ... and didn't know what was going on." In response to a question by defense counsel, appellant acknowledged that he thought Cliette had a gun because he had seen him pull out a gun on two prior occasions. He stated further: "I shot the gun, I think, three times. I just pulled the trigger three times."

The weapon used in this case was never recovered.[3] Nonetheless, in the government's case in chief, the jury heard appellant's taped statement to police,[4] in which he admitted shooting Cliette with what he believed was a ".38." Moreover, in addition to appellant's own testimony before the jury that he shot Cliette, Campbell, who identified appellant at trial, also provided eyewitness testimony of the shooting. He stated on direct examination that as he and Cliette passed near the place where appellant was standing on Galen Street on the night of June 30, 1989, "[appellant] started shooting. [Cliette],—the bullet went through his head and he went on the cement. I looked at him. He started shooting at me, too, and I ran down the hill." In response to a question as to how many shots were fired, Campbell testified: "It was 3 at first. The one that hit Troy, it sounded like it was ricocheying [sic] off the fence because it wasn't a straight shot." Asked how many shots were fired after the first three, he said: "Another 3, 3 more."

## II.

■ Appellant contends that the trial court committed plain error as to all charges for which he was convicted by omitting from its final jury instructions the statutory definition of pistol. The indictment alleged that, *inter alia*, appellant committed murder while armed with *a pis-*

tol; that he possessed a firearm, namely *a pistol*, during a crime of violence; and that he carried *a pistol* without a license. The thrust of appellant's argument is that the jurors could not determine if the prosecution had proved what was alleged, unless they were told what a pistol was, and that this instructional omission in the present case was fatal. Appellant, however, failed to object to the alleged instructional omission at trial.

Super.Ct.Crim.R. 30 provides in relevant part:

No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection.

As we said in *Deneal v. United States*, 551 A.2d 1312, 1316 (D.C.1988):

The purpose of [Super.Ct.Crim.R. 30] is to give the trial court the opportunity to correct errors and omissions which otherwise might necessitate a new trial, thus discouraging counsel from purposefully withholding objections.

*Id.*

■ Notwithstanding the absolute language of Rule 30, *supra*, this court may review whether the trial court erred by failing to instruct the jury on the statutory definition of pistol, but the scope of our review must be in accordance with the extremely limited plain error standard. "[R]eversal under the plain error doctrine is justified only in exceptional circumstances where 'a miscarriage of justice would otherwise result.'" *Harris v. United States*, 602 A.2d 154, 159 (D.C.1992) (en banc) (citation omitted). In our view, there is no question that appellant shot and killed

---

**3.** Appellant testified that he used a gun which was handed to him at just the moment he decided to use it by an unidentified third person. After he had shot Cliette, appellant handed the gun back to the unidentified third person and ran away from the scene. Officer Joe L. Henderson, an evidence technician with the Metropolitan Police Department's Mobile Crime Lab, testified that, upon arriving at the scene

following the incident, he found blood in the area where Cliette had been shot and one undischarged bullet, which he determined, based on its location, was not related to this case.

**4.** Appellant's taped statement to police, which was designated Government's Exhibit No. 16, was played for the jury, but not transcribed.

the decedent while armed with a pistol; and the procedures at trial were essentially fair. Thus, we find no miscarriage of justice that would warrant reversal of any of appellant's convictions.

Our decision in *Kind v. United States*, 529 A.2d 294 (D.C.1987) (failure to instruct on every essential element of a crime is per se reversible plain error),[5] a decision which appellant relied on in his original brief, has been specifically overruled by this court's en banc decision in *White v. United States*, 613 A.2d 869 (D.C.1992) (en banc). We held in *White*, that

> at least where no objection is raised at trial to the instructions as given, any such error will not be a cause for reversal where the relevant facts are so closely related that no rational jury, shown by its verdict to have found the facts necessary to convict the defendant under the instructions as given, could have failed, if fully instructed *on each element*, to have found in addition the facts necessary to comprise the omitted element.

*Id.* at 879 (emphasis added).

At oral argument before this court, appellant argued that the test set forth in *White, supra,* is not applicable to the instant case, because the facts of the two cases are distinguishable. Appellant contrasts the two cases as follows: In *White,* a forgery case, although the trial court failed to instruct the jury that in order to convict it must find that the value of each check exceeded $250.00,[6] we held on appeal that it was sufficient that each one of the checks in evidence exceeded $250.00. 613 A.2d at 879. In the present case, appellant argues that the trial court never instructed the jury that in order to find appellant guilty of second-degree murder while armed with a pistol, possession of a pistol

during a crime of violence, and carrying a pistol without a license, it must find that the gun used to murder Cliette had a barrel less than 12 inches in length. D.C.Code § 22–3201(a). In contrast to *White,* however, no tangible evidence, i.e., the pistol, or the bullet from the pistol, was presented to the jury for its consideration during its deliberations. Thus, appellant urges us to conclude that the test in *White* is not applicable to the present case, "because the facts in this case are not so closely related that even if fully instructed, no rational jury could have failed to find the required element of the instruction omitted"—i.e., "that even if [the jury were] fully instructed, there was insufficient evidence presented that the weapon used in this case was a pistol, as defined in [D.C.Code § 22–3201(a)]." Appellant's argument is unpersuasive.

### A.

We first consider the trial court's instructions on second-degree murder while armed and on possession of a firearm during a crime of violence. It is significant that neither offense even requires proof that the weapon in question be a pistol. With regard to the second-degree murder count, the "while armed" element requires proof that one who commits this offense be armed with or have readily available "any pistol or other firearm (or imitation thereof) or other dangerous or deadly weapon (including a sawed-off shotgun, machine-gun, rifle, dirk, bowie knife, butcher knife, switchblade knife, razor, blackjack, billy, or metallic or other false knuckles)[.]" D.C.Code § 22–3202(a). Thus, it is not necessary that the dangerous or deadly weapon be a pistol, or even a firearm, *Meredith v. United States*, 343 A.2d 317, 320 (D.C.

---

**5.** In *Kind, supra,* the court reversed a conviction for possession of a prohibited weapon with intent to use it unlawfully against another person because the trial judge failed to instruct the jury that the knife in question had to have a blade longer than three inches under the pertinent statute. 529 A.2d at 295. The court, noting that the policy basis for the rule was the Sixth Amendment right to a jury trial, held that "the failure to instruct the jury on every essential element of the crime is per se reversible 'plain

error....' " *Id.* (citation omitted). The court in *Kind* also noted that it was the "element of centrality" of the knife length, part of the statutory definition of the crime itself, which made such a strict rule necessary in that case. *Id.* at 296.

**6.** An element of this felony offense is "[a] written instrument having a value of $250 or more." D.C.Code § 22–3842(b)(3) (1989).

1975), although certain mandatory-minimum penalties are triggered if the defendant was armed with a pistol or firearm. D.C.Code § 22–3202(a). Similarly, possession of a firearm during commission of a crime of violence requires proof that while committing a crime of violence, the defendant possessed "a pistol, machine gun, shotgun, rifle, or any other firearm or imitation firearm...." D.C.Code § 22–3204(b). Again, however, the weapon need not be a pistol. It could be any firearm, although, again, possession of the firearm triggers a mandatory-minimum penalty. Since proof of the use of a pistol was not even necessary to prove either second-degree murder while armed or possession of a firearm during a crime of violence, we hold that there was no instructional omission of the kind which *White,* addressed. Accordingly, we find no error, much less plain error.

### B.

■ Turning next to the trial court's instruction on the charge of carrying a pistol without a license, we note that this offense has three essential elements: (1) carrying an operable pistol; (2) without a license; and (3) with intent to do those two acts. *See Tucker v. United States,* 421 A.2d 32 (D.C.1980). Although the trial court instructed the jury on each of the essential elements of the offense as required, the court again did not provide the jury with the statutory definition of a pistol. The statutory definition of the term "pistol," however, is just that—*a definition* of a term included in one of the elements. It is *not an element* of the statutory offense that the trial court was required to specifically include as part of the jury instructions.[7]

Moreover, not only was the jury appropriately instructed, but the uncontroverted facts surrounding the commission of the

offenses are so closely related that no rational jury could have failed to find that the gun admittedly used by the appellant was a pistol. Aside from appellant's own testimony that he shot Cliette with a gun, Campbell, an eyewitness, also testified that he saw appellant shoot Cliette and that he saw Cliette fall to the ground after a bullet went through his head. In addition, the Deputy Medical Examiner for the District of Columbia testified that the official autopsy report states that Cliette's cause of death was "gunshot wound of head." Finally, the jury could reasonably infer from appellant's taped statement to police that the gun he used was a pistol. In particular, appellant stated that he believed he used a ".38." This is significant because a ".38" is a pistol for purposes of the offense of carrying a pistol without a license. *See Deneal, supra,* 551 A.2d at 1313; *see also Bates v. United States,* 619 A.2d 984, 985 (D.C.1993) (per curiam), (eyewitness testimony that appellant pointed a small "silver thing" that "looked like a gun" at the driver of a taxicab while demanding that he relinquish the six dollars in his hand "was sufficient to prove that he used a real or imitation pistol" in committing an armed robbery (D.C.Code §§ 22–2901, –3202 (1989), and that he possessed a real or imitation pistol during a crime of violence (D.C.Code § 22–3204(b)). As we stated in *Boyd v. United States,* 473 A.2d 828, 832 (D.C.1984), "credibility is the handmaiden of sufficiency." Therefore, we find no error, much less plain error, on the part of the trial court on the basis of its failure to provide the jury with a statutory definition of pistol in its instruction in the charge of carrying a pistol without a license.

### III.

■ In determining whether the evidence was sufficient to support a conviction, this court applies the same standard used by the trial court in deciding a motion

7. In any event, the trial court provided the jury with a complete set of written instructions applicable to the offense of carrying a pistol without a license, which contained the statutory definition of "pistol," preceded by a very clear oral admonition that they should refer to the written instructions to fill in any gaps in their recollection of the court's oral instructions. Moreover, while the jurors were deliberating, they sent back to the court two questions, which, in our view, were very comprehensive and indicated that they had read, considered, and followed the instructions..

for judgment of acquittal. *Curry v. United States*, 520 A.2d 255, 263 (D.C.1987). Accordingly, we must "review the evidence in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, and making no distinction between direct and circumstantial evidence." *Id.* (citations omitted). *See also Earle v. United States*, 612 A.2d 1258, 1265 (D.C.1992). Reversal of the trial court's denial of appellant's motion for judgment of acquittal is warranted "only where there is no evidence upon which a reasonable [juror] could infer guilt beyond a reasonable doubt." *Head v. United States*, 451 A.2d 615, 622 (D.C. 1982).

■ Appellant argues that the trial court incorrectly denied his motion for judgment of acquittal because the evidence was insufficient to support any of his convictions. He contends that even if the jury had been instructed on the meaning of the term "pistol" as defined in D.C.Code § 22–3201(a), the government produced insufficient evidence that the weapon used in this case was a pistol. Appellant relies primarily on the fact that no gun was recovered; that the bullet that killed Cliette entered his right scalp and exited the left side of his head and was not recovered; and, that a search of the crime scene produced no evidence of the type of gun used in this case.

In our view, the evidence of appellant's use of a pistol during the commission of the offenses, which we have set forth in detail in Part II. B, *supra*, though not tangible, is nevertheless persuasive. We, therefore, hold that the evidence adduced at trial clearly was sufficient to sustain appellant's convictions and that the trial court properly denied appellant's motion for a judgment of acquittal. *See Earle, supra*, 612 A.2d at 1265; *Curry, supra*, 520 A.2d at 263.

Accordingly, the judgment appealed from hereby is

*Affirmed.*