**Darrell J. JOHNSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 79–1018.**

District of Columbia Court of Appeals.

Argued June 30, 1980.

Decided Sept. 29, 1980.

Robert J. Murphy, appointed by this court, for appellant.

Keith A. O'Donnell, Asst. U. S. Atty., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry and John H. Korns, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KERN and GALLAGHER, Associate Judges, and HAYWOOD, Associate Judge of the Superior Court of the District of Columbia.*

PER CURIAM:

Appellant challenges his conviction for robbery [1] after trial by jury on the grounds that (1) the government's evidence was insufficient, and (2) it was plain error for the prosecutor during his cross–examination of appellant to confront him with an incriminatory statement he had made during a pretrial proceeding culminating in a plea of guilty, which was subsequently vacated.[2]

■ As to the first contention, the record reflects that appellant and a confederate grabbed the complaining witness from behind, wrestled away his wallet and ran. Complainant pursued appellant down the street and around the corner, thereby attracting the attention of a police officer driving by in his cruiser with a canine partner. The policeman took chase, observing appellant throw down an object which turned out to be the wallet, and cornered appellant in an alley behind a parked vehicle. With the aid of the dog, appellant was flushed from his hiding place under the vehicle. Clearly, there was sufficient evidence to support the jury's verdict.

■ As to the assertion of plain error occurring during the appellant's cross–examination, he had testified that on the

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

1. D.C.Code 1973, § 22–2901.

2. Appellant pleaded guilty in open court to the crime charged but then the trial court upon the basis of his conversations with the probation office vacated the plea and a trial was held, culminating in the judgment of conviction he now challenges on appeal.

night in question he stepped in between the victim and other men who were fighting; that complainant had then announced his wallet was missing; whereupon someone ran from the crowd that had gathered; and, appellant set off in pursuit of the thief. Ultimately, appellant caught up with him and commanded him to "drop it." The thief complied, and while appellant was examining the recovered wallet a police officer arrived and signalled his dog to restrain appellant.

On cross–examination, the prosecutor elicited an unequivocal assertion by appellant from the stand that he had the wallet in his possession because he had picked it up after the thief had dropped it. The following colloquy then occurred:

Q. You appeared in this court on March 2nd of this year, didn't you?

A. Uh–huh.

Q. You were put under oath and at that time you testified about what happened in this incident?

A. Yes, sir.

Q. You were asked this question and gave this answer, weren't you?

Question: "How did you get the wallet?"

Answer: "It was already out. I snatched it from this man, but the man that say I snatched it, that wasn't the man. I snatched it from another man." Didn't you give that answer?

A. I gave that because my lawyer, he told my that it wasn't no way I could beat it.

Q. You said that under oath and it wasn't true?

A. I was just trying to get out the best way I can, 'cause I ain't used to getting in no trouble.

Q. You were not telling the truth at the time?

A. It wasn't nobody else to take it but me.

Q. You were intentionally telling what was not the truth because you were trying to get off, right?

A. Yes, sir. [Record at 84.]

There was no defense objection at that time. During the prosecutor's closing argument, he commented:

Yes, he was certain that was what happened, absolutely certain. That's the way it happened. Yet he acknowledged that on an earlier occasion, under oath, he testified to a completely different version of how he got that wallet, that he snatched it from somebody. When asked to explain himself, he said, "Well, yes, that wasn't true," somebody told him to say that. He was going to say it because he thought it would help him. [Record at 96.]

Defense counsel did not object then nor request any special instruction of the jury. (Record at 113.) Nevertheless, the trial court in its charge to the jury instructed:

Further, the testimony of a witness may be discredited or impeached by showing that that witness previously made statements which are not consistent with present testimony. Such prior statements are admitted in evidence solely to assist you on the matter of credibility, and you may not consider the prior statement as proving the truth of anything that is contained in that statement. [Record at 122.]

We are of the opinion that the prosecutor's questioning set forth above was improper. Super.Ct.Cr.R. 11(e)(4) provides in pertinent part:

Evidence ... of statements made in connection with ... any ... pleas ... is not admissible in any ... criminal proceeding against the person who made the plea.[3]

However, we note the strength of the government's case, the absence of a defense

---

**3.** The government points to the "exception" proviso in the Rule that permits use of a "statement" in "a criminal proceeding for perjury or false statement" as justifying the prosecutor's cross–examination here. However, this exception is clearly inapplicable to the instant prosecution.

We also reject appellee's argument that, under *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), and its progeny, the statements complained of here were properly

objection to the prosecutor's questions, and the fact that the court gave a limiting instruction to the jury on the inconsistency between appellant's trial testimony and his prior statement. No indication was given the jury that this statement had been made during the taking of the plea. Accordingly, we are not persuaded that the error here must be noticed as plain error because of "a probability of a miscarriage of justice," *Crisafi v. United States*, D.C.App., 383 A.2d 1, 6, *cert. denied*, 439 U.S. 931, 99 S.Ct. 322, 58 L.Ed.2d 326 (1978), or because it "affect[s] substantial rights of the accused and if uncorrected would be an affront to the integrity and reputation of judicial proceedings." *Harling v. United States*, D.C.App., 382 A.2d 845, 847 (1978). Nevertheless, we do admonish the government to heed the provisions of Super.Ct.Cr.R. 11(e)(4) and avoid future transgressions of it.

*Affirmed.*

used on cross-examination for purposes of impeachment, even though they were inadmissible in the government's case in chief. The legislative history of Fed.R.Crim.P. 11(e)(6), the federal analogue to Super.Ct.Cr.R. 11(e)(4), reveals that Congress adopted the House version of the rule, explicitly rejecting the Senate approach which would have allowed use of statements made in connection with withdrawn guilty pleas for impeachment purposes. *See* H.R.Rep.No.414, 94th Cong., 1st Sess. 10, *reprinted in* [1975] U.S.Code Cong. & Admin. News, pp. 713, 714. *Accord, United States v. Martinez*, 536 F.2d 1107 (5th Cir. 1976). D.C.

Code 1973, § 11–946 provides that the Superior Court shall conduct its business according to the Federal Rules of Criminal Procedure, and we have previously held that while this court is not bound in its interpretation of the Superior Court Rules by the federal courts' interpretations of the Federal Rules, "we may find those decisions to be analogous authority for our interpretations of the essentially identical provisions." *Bazata v. National Insurance Company of Washington*, D.C.App., 400 A.2d 313, 314 n. 1 (1979); *Campbell v. United States*, D.C.App., 295 A.2d 498, 501 (1972).